# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN DALE PREACHER, ) | |
|     Plaintiff ) | Civil Action No. 17-18 Erie |
| ) | |
| v. ) | |
| ) | Magistrate Judge Baxter |
| MICHAEL D. OVERMYER, et al., ) | |
|     Defendants ) | |

## MEMORANDUM OPINION

United States Magistrate Judge Susan Paradise Baxter

### I.     INTRODUCTION

#### A.     Relevant Procedural and Factual History

Plaintiff John Dale Preacher, a prisoner formerly incarcerated at the State Correctional Institution at Forest in Marienville, Pennsylvania ("SCI Forest"),[1] initiated this civil rights action on January 20, 2017, by filing a *pro se* complaint pursuant to 42 U.S.C. § 1983. Plaintiff subsequently filed an amended complaint on August 2, 2017, which superseded the original complaint and is the operative pleading in this case. [ECF No. 23]. The amended complaint is a sprawling 52-page document containing 231 paragraphs and multiple claims against thirty-five (35) Defendants, all of whom were employed at SCI-Forest during the relevant time periods at issue: Superintendent Michael D. Overmyer ("Overmyer"); Deputy Superintendent Derek F. Oberlander ("Oberlander"); Captain Ernesto J. Mongelluzzo ("Mongelluzzo"); Program Manager Erin Ireland ("Ireland"); Major Paul A. Ennis ("Ennis"); Captain C. Carter ("Carter"); Lieutenant Justin Davis ("Davis"); Lieutenant Douglas Dickey ("Dickey"); Chief Psychologist Bruce Simon ("Simon"); Unit Manager Matthew J. Blicha ("Blicha"); Counselor Sharon Price ("Price");

---

[1] Plaintiff is currently incarcerated at the State Correctional Institution at Somerset, Pennsylvania.

Lieutenant Heffernan ("Heffernan"); Registered Nurse Kathleen Hill ("Hill"); Psychology employee Kevin C. Cowan ("Cowan"); Sergeant J.H. Culver ("Culver"); Lieutenant Richard Wonderling ("Wonderling"); Sergeant Shawn Fredrickson ("Fredrickson"); Corrections Officers B.J. Long ("Long"), B.J. Boddorf ("Boddorf"), C.J. Frey ("Frey"), Smalls ("Smalls"), Barnes ("Barnes"), R.P. Smith ("Smith"), J.D. Reddick ("Reddick"), M. Booher ("Booher"), G.W. Hiler ("Hiler"), Weiss ("Weiss"), J.E. Coleman ("Coleman"), Farcus ("Farcus"), and Termine ("Termine"); Food Service Manager Kevin Dittman ("Dittman"); Food Service Instructor L. Whisner ("Whisner"); Sergeant M. Gilara ("Gilara"); Psychiatrist Craig Hasper ("Hasper"); and Food Service Supervisor Holloway ("Holloway"). For ease of reference, all Defendants, other than Defendant Hasper, will be collectively referred to as "DOC Defendants."

In general, Plaintiff raises claims under the first, eighth, and fourteenth amendments to the United States Constitution, as well as state law tort claims of assault and battery, intentional infliction of emotional distress, and negligence. In particular, Plaintiff makes the following discernible claims:

1. First, Eighth, and Fourteenth Amendment claims against Defendants Holloway, Dittman, and Whisner arising from the termination of his prison job on or about May 29, 2015 (ECF No. 23, Amended Complaint, at ¶¶ 23-35);

2. First, Eighth, and Fourteenth Amendment claims against Defendants Long, Farcus, Smalls, Termine, Heffernan, Fredrickson, and Overmyer arising from alleged abuses that allegedly occurred during Plaintiff's confinement in disciplinary custody from early June to July 25, 2015 (Id. at ¶¶ 36-62);

3. First, Eighth, and Fourteenth Amendment claims against Defendants Long, Boddorf, Termine, Barnes, Smalls, Culver, Heffernan, and Mongelluzzo arising from abuses that allegedly occurred during Plaintiff's confinement in the RHU from January 18, 2016 to March 28, 2016 (Id. at ¶¶ 64-106, 108-111);

4. An Eighth Amendment deliberate indifference and Fourteenth Amendment due process claims against Defendants Hasper and Cowan alleging the denial of adequate mental health care (Id. at ¶¶ 80-81, 88-89, 107);

5. An Eighth Amendment deliberate indifference to serious medical needs claim against Defendant Hill (Id. at ¶¶ 112-117);

6. First, Eighth, and Fourteenth Amendment claims against Defendants Heffernan and Termine arising from the confiscation and alleged destruction of rusted metal pieces that were allegedly placed in Plaintiff's food (Id. at ¶¶ 118-122);

7. First, Eighth, and Fourteenth Amendment claims against Defendants Barnes and Smalls regarding alleged abuses that occurred while Plaintiff was confined in a hard cell in April and May 2016 (Id. at ¶¶ 123-148);

8. A First Amendment retaliation claim against Defendant Booher (Id. at ¶¶ 142-143, 149);

9. A First Amendment denial of access to courts claim against Defendant Smith (Id. at ¶¶ 145-146, 150);

10. First Amendment retaliation and denial of access to courts claims against Defendant Reddick arising from his confiscation and Xeroxing of Plaintiff's legal mail on May 19, 2016 (Id. at ¶ 151);

11. An Eight Amendment failure to protect claim against Defendant Overmyer (Id. at ¶¶ 156-157);

12. First Amendment retaliation and Fourteenth Amendment equal protection claims against Defendant Hiler for denying Plaintiff a towel to cover himself on the way to the shower and sexually harassing him (Id. at ¶¶ 161, 205);

13. First, Eighth, and Fourteenth Amendment claims against Defendant Gilara for recording Plaintiff going to the showers without a towel (Id. at ¶¶ 161, 206);

14. First Amendment retaliation and Fourteenth Amendment equal protection claims against Defendant Price for taking Plaintiff's daughter and her mother removed from Plaintiff's visitation list and discriminating against Plaintiff on the basis of his Muslim religion (Id. at ¶¶ 189-196, 207);

15. A First Amendment retaliation claim against Defendant Frey for writing a false misconduct (Id. at ¶¶ 163, 200-203, 208);

16. First, Eighth, and Fourteenth Amendment claims against Defendants Coleman and Weiss for sexually harassing Plaintiff (Id. at ¶¶ 169, 172, 209);

17. Eighth and Fourteenth Amendment claims against Defendant Blicha for failing to take remedial action against subordinates to stop continual harassment and retaliation (Id. at ¶¶ 171, 174-175, 193, 210);

18. First Amendment retaliation and Eighth Amendment failure to protect and deliberate indifference claims against Defendant Dickey (Id. at ¶¶ 164-167, 176, 179, 211);

19. An Eighth Amendment deliberate indifference claim against Defendants Davis and Ireland (Id. at ¶¶ 160, 167, 173, 212);

20. An Eighth Amendment failure to protect claim against Defendant Carter (Id. at ¶¶ 167, 213);

21. An Eighth Amendment failure to protect claim against Defendants Ennis and Oberlander arising from their failure to prevent continual harassment and retaliation by their subordinates (Id. at ¶¶ 177, 188, 191, 204, 214); and

22. First Amendment denial of access to courts and retaliation claims against Defendant Long arising from his destruction of Plaintiff's legal documents (Id. at ¶¶ 158-159, 215).

On January 18, 2018, this Court issued a Memorandum Order [ECF No. 53] denying the DOC Defendants' motion to dismiss Plaintiff's amended complaint [ECF No. 29], which essentially sought to have the amended complaint severed into multiple lawsuits or, alternatively, to have Plaintiff file a more definite statement of his claims.[2] The DOC Defendants subsequently filed an answer to the amended complaint. [ECF No. 55].

---

[2] At the time the DOC Defendants filed their motion to dismiss, Defendant Hasper had not yet been served with the amended complaint.

In the meantime, on January 3, 2018, Defendant Hasper filed his own motion to dismiss [ECF No. 50], arguing, *inter alia*, that Plaintiff failed to exhaust his administrative remedies and, alternatively, has failed to state a cause of action upon which relief may be granted. Plaintiff has since filed a brief in opposition to Defendant Hasper's motion [ECF No. 57], to which Defendant Hasper has filed a reply brief [ECF No. 59]. This matter is now ripe for consideration.

### B. Standards of Review

#### 1. Motion to Dismiss

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). See also Ashcroft v. Iqbal, 556 U.S. 662, 678 (May 18, 2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). See also McTernan v. City of York, Pennsylvania, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). A Plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556, citing 5 C.Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004). Although the United States Supreme

Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del. February 19, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556.

The Third Circuit subsequently expounded on the Twombly/Iqbal line of cases:

> To determine the sufficiency of a complaint under Twombly and Iqbal, we must take the following three steps:
>
> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) quoting Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

### 2. *Pro se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520–21 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Brierley, 414 F.2d 552,

6

555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with measure of tolerance"). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997), overruled on other grounds by Abdul-Akbar v. McKelvie, 239 F.3d 307, 311 (3d Cir. 2001). Because Plaintiff is a *pro se* litigant, this court may consider facts and make inferences when appropriate.

### C. Discussion

#### 1. Exhaustion of Administrative Remedies

Plaintiff claims that Defendant Hasper violated his Eighth and Fourteenth Amendment rights by denying him "adequate mental health care treatment… in failing to report abuse" he allegedly suffered at the hands of other Defendants, and "in not providing any effective treatment for the mental health issues experienced from the incidents." (ECF No. 23, Amended Complaint, at ¶ 107). Defendant Hasper argues that Plaintiff's claims against him must be dismissed because Plaintiff failed to comply with the exhaustion requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"), which provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted.

Id.[3]

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as

---

[3] It is not a plaintiff's burden to affirmatively plead exhaustion. Jones v. Bock, 549 U.S. 199, 216 (2007) ("...failure to exhaust is an affirmative defense under the PLRA, and inmates are not required to specially plead or demonstrate exhaustion in their complaints"). Instead, the failure to exhaust must be asserted and proven by the defendants. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).

particular episodes. Porter v. Nussle, 534 U.S. 516 (2002); Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).[4] The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").[5]

Indeed, the United States Supreme Court has repeatedly confirmed that "[t]here is no question that exhaustion is mandatory under the PLRA." Ross v. Blake, ___ U.S. ___, 136 S. Ct. 1850, 1856 (2016), quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006), accord Jones v. Bock, 549 U.S. 199, 211 (2007). "And that mandatory language means a court may not excuse a failure to exhaust, even to take [] [special] circumstances into account." Ross at 1856.

Because the PLRA is a statutory exhaustion provision, "Congress sets the rules – and courts have a role in creating exceptions only if Congress wants them to. For that reason, mandatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." Id. at 1857. Accordingly, exhaustion is required regardless of the

---

[4] Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction. Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that §1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

[5] There is no "futility" exception to the administrative exhaustion requirement. Banks v. Roberts, 2007 WL 3096585, at * 1 (3d Cir.) citing Nyhuis, 204 F.3d at 71 ("[Plaintiff's] argument fails under this Court's bright line rule that 'completely precludes a futility exception to the PLRA's mandatory exhaustion requirement.'"). See also Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Indeed, as we held in *Booth*, a prisoner must now exhaust administrative remedies even where the relief sought-monetary damages-cannot be granted by the administrative process.").

availability of the requested relief, and regardless of the nature of the underlying claim, whether it arises from excessive force, or a violation of the constitution. Id., citing, Booth v. Churner, 532 U.S. 731, 741 (2001); Porter, 534 U.S. at 520; Woodford, 548 U.S. at 91. Additionally, exhaustion must be "proper," which "demands compliance with an agency's deadlines and other critical procedural rules." Woodford, at 90. This serves to protect "administrative agency authority" over the matter, giving an agency "an opportunity to correct its own mistakes … before it is haled into federal court," and "discourages 'disregard of [the agency's] procedures." Id. at 89, quoting McCarthy, 503 U.S. at 145.

Where the provisions of a grievance process expressly require the identification of named defendants, or the use of specified appeal forms, or even the signature of an inmate, the Court of Appeals for the Third Circuit has found procedural default in an inmate's failure to comply as instructed. See, e.g., Rosa-Diaz v. Dow, 683 Fed. Appx. 103, 105–06 (3d Cir. 2017) (inmate failed to name particular defendant in grievance related to assault, where grievance policy required identification of defendants); Small v. Lanigan, 656 F. App'x 586, 589–90 (3d Cir. 2016) (prisoner's use of correspondence to appeal grievance denials was not authorized process and constituted procedural default, despite the fact that some of his letters were answered); Walker v. Glunt, 654 F. App'x 531, 534 (3d Cir. 2016) (prisoner failed to sign his grievance, and signature held to constitute an important procedural requirement set by the institution); Mack v. Klopotoski, 540 F. App'x 108, 113 (3d Cir. 2013) (finding procedural default where inmate failed to provide photocopies of grievances and responses received to date to pursue internal appeal).

### a. The Administrative Process Available to State Inmates

So then, no analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones, 549 U.S. at 218.

The DC-ADM 804 grievance system, available to state prisoners, consists of three separate stages. First, the prisoner is required to timely submit a written grievance for review by the facility manager or the regional grievance coordinator within fifteen days of the incident, who responds in writing within ten business days. Second, the inmate must timely submit a written appeal to intermediate review within ten working days, and again the inmate receives a written response within ten working days. Finally, the inmate must submit a timely appeal to the Central Office Review Committee within fifteen working days, and the inmate will receive a final determination in writing within thirty days. See Booth v. Churner, 206 F.3d 289, 293 n.2 (3d Cir. 1997), aff'd. 532 U.S. 731 (2001).

### b. Analysis

In support of his argument that Plaintiff failed to exhaust administrative remedies as to all claims against him, Defendant Hasper has submitted copies of all records produced by the DOC Secretary's Office of Inmate Grievances and Appeals in response to his subpoena requesting "a complete copy of any and all grievance records, including grievances, rulings, appeals, etc., pertaining to Inmate John Dale Preacher (Inmate #HU-7994) from February 2016 to present."

(ECF No. 51-2, at p. 1).[6] These records consist of 316 pages of documents related to 35 grievances that were filed by Plaintiff during the relevant period of time. [ECF Nos. 51-3 to 51-6]. Notably absent from these records is any mention of Defendant Hasper or the claims asserted against him. Plaintiff does not deny this fact in his opposition brief, nor does he state any argument that would excuse his failure to satisfy the exhaustion requirement.

The Third Circuit Court has consistently recognized that "a Pennsylvania inmate's failure to properly identify a defendant constitute[s] a failure to properly exhaust his administrative remedies under the PLRA." <u>Williams v. Pennsylvania Dept. of Corrections</u>, 146 Fed. Appx. 554, 557 (3d Cir. 2005), <u>citing</u> <u>Spruill</u>, 372 F.3d 218, 234 (3d Cir. 2004). Thus, the Court finds that Plaintiff failed to exhaust his administrative remedies with regard to his claims against Defendant Hasper, and such claims will be dismissed.

An appropriate Order follows.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: August 27, 2018

---

[6] According to the complaint, Plaintiff's interaction with Defendant Hasper occurred on or about February 19, 2016 (ECF No. 23, Amended Complaint, at ¶ 80).