IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOHN DALE PREACHER,               )
                                   )
            Plaintiff              )     Case No. 1:17-cv-18
                                   )
vs.                                )
                                   )
                                   )
                                   )     RICHARD A. LANZILLO
MICHAEL D. OVERMYER, et al.,       )     UNITED STATES MAGISTRATE JUDGE
                                   )
            Defendants             )
                                   )     MEMORANDUM OPINION ON
                                   )     DEFENDANTS' MOTION FOR
                                   )     SUMMARY JUDGMENT
                                   )     [ECF No. 90]
                                   )

I.      Introduction

        Plaintiff John Dale Preacher has asserted claims pursuant to 42 U.S.C. §1983 against a

multitude of Pennsylvania Department of Corrections (DOC) personnel at the State Correctional

Institution at Forest, Pennsylvania (SCI-Forest).  He alleges that the defendants violated his

rights under the First, Eighth, and Fourteenth Amendments to the U.S. Constitution at various

times between May, 2015 and October, 2016.  All defendants have moved for summary

judgment pursuant to Fed. R. Civ. P. 56.  For the reasons discussed below, the Court will grant

defendants' motion.[1]

---

[1] All parties have consented to the jurisdiction of a United States Magistrate Judge to preside over proceedings in the
action, including the entry of final judgment. *See* ECF Nos. 1, 5, 14; *see also* 28 U.S.C. § 636(c)(1).

II.     Relevant Procedural History

Preacher commenced this §1983 action by filing a motion to proceed in forma pauperis and a pro se Complaint on January 20, 2017. ECF No. 1. Preacher named the following thirty-five DOC employees as defendants: SCI Forest Superintendent Michael D. Overmyer ("Overmyer"); Deputy Superintendent Derek F. Oberlander ("Oberlander"); Captain Ernesto J. Mongelluzzo ("Mongelluzzo"); Program Manager Erin Ireland ("Ireland"); Major Paul A. Ennis ("Ennis"); Captain C. Carter ("Carter"); Lieutenant Justin Davis ("Davis"); Lieutenant Douglas Dickey ("Dickey"); Chief Psychologist Bruce Simon ("Simon"); Unit Manager Matthew J. Blicha ("Blicha"); Counselor Sharon Price ("Price"); Lieutenant Heffernan ("Heffernan"); Registered Nurse Kathleen Hill ("Hill"); Psychology employee Kevin C. Cowan ("Cowan"); Sergeant J.H. Culver ("Culver"); Lieutenant Richard Wonderling ("Wonderling"); Sergeant Shawn Fredrickson ("Fredrickson"); Corrections Officers B.J. Long ("Long"), B.J. Boddorf ("Boddorf"), C.J. Frey ("Frey"), Smalls ("Smalls"), Barnes ("Barnes"), R.P. Smith ("Smith"), J.D. Reddick ("Reddick"), M. Booher ("Booher"), G.W. Hiler ("Hiler"), Weiss ("Weiss"), J.E. Coleman ("Coleman"), Farcus ("Farcus"), and Termine ("Termine"); Food Service Manager Kevin Dittman ("Dittman"); Food Service Instructor L. Whisner ("Whisner"); Sergeant M. Gilara ("Gilara"); Psychiatrist Craig Hasper ("Hasper"); and Food Service Supervisor Holloway ("Holloway").

On August 2, 2017, Preacher filed a 52-page, 231 paragraph Amended Complaint. *See* ECF No. 23. The Amended Complaint is not divided into counts or otherwise organized to allow the defendants or the Court to readily identify the claims he asserts or the defendant or defendants against whom he asserts each claim.  The Amended Complaint makes only passing reference to certain defendants.  Recognizing Preacher's pro se status, the Court has endeavored

to identify any potential claim or claims against each defendant. After careful review of the Amended Complaint, the Court has identified the following claims:

1. First, Eighth, and Fourteenth Amendment claims against Defendants Holloway, Dittman, and Whisner arising from the termination of his prison job on or about May 29, 2015 (ECF No. 23, Amended Complaint, at ¶¶ 23-35);

2. First, Eighth, and Fourteenth Amendment claims against Defendants Long, Farcus, Smalls, Termine, Heffernan, Fredrickson, and Overmyer arising from alleged abuses during Preacher's confinement in disciplinary custody from early June to July 25, 2015 (*Id.* at ¶¶ 36-62);

3. First, Eighth, and Fourteenth Amendment claims against Defendants Long, Boddorf, Termine, Barnes, Smalls, Culver, Heffernan, and Mongelluzzo arising from abuses that allegedly occurred during Preacher's confinement in the RHU from January 18, 2016 to March 28, 2016 (*Id.* at ¶¶ 64-106, 108-111);

4. An Eighth Amendment deliberate indifference and Fourteenth Amendment due process claims against Defendant Cowan based upon the alleged denial of adequate mental health care (*Id.* at ¶¶ 80-81, 88-89, 107);

5. An Eighth Amendment deliberate indifference to serious medical needs claim against Defendant Hill (*Id.* at ¶¶ 112-117);

6. First, Eighth, and Fourteenth Amendment claims against Defendants Long, Heffernan, and Termine arising from the confiscation and alleged destruction of rusted metal pieces that were allegedly placed in Preacher's food (*Id.* at ¶¶ 118-122);

7. First, Eighth, and Fourteenth Amendment claims against Defendants Barnes and Smalls regarding alleged abuses that occurred while Preacher was confined in a hard cell in April and May of 2016 (*Id.* at ¶¶ 123-148);

8. A First Amendment retaliation claim against Defendant Booher (*Id.* at ¶¶ 142-143, 149);

9. A First Amendment denial of access to courts claim against Defendant Smith (*Id.* at ¶¶ 145-146, 150);

10. First Amendment retaliation and denial of access to courts claims against Defendant Reddick arising from his confiscation and copying of Preacher's legal mail on May 19, 2016 (*Id.* at ¶ 151);

11. An Eight Amendment failure to protect claim against Defendant Overmyer (*Id.* at ¶¶ 156-157);

12. First Amendment retaliation and Fourteenth Amendment equal protection claims against Defendant Hiler for denying Preacher a towel to cover himself on the way to the shower and sexually harassing him (*Id.* at ¶¶ 161, 205);

13. First, Eighth, and Fourteenth Amendment claims against Defendant Gilara for recording Preacher going to the showers without a towel (*Id.* at ¶¶ 161, 206);

14. First Amendment retaliation and Fourteenth Amendment equal protection claims against Defendant Price for removing Preacher's daughter and her mother from his visitation list and discriminating against him on the basis of his Muslim religion (*Id.* at ¶¶ 189-196, 207);

15. An Eighth Amendment claim against Defendant Frey for writing a false misconduct (*Id.* at ¶¶ 163, 200-203, 208);

16. First, Eighth, and Fourteenth Amendment claims against Defendants Coleman and Weiss for sexually harassing Preacher (*Id.* at ¶¶ 169, 172, 209);

17. Eighth and Fourteenth Amendment claims against Defendant Blicha for failing to take remedial action against subordinates to stop continual harassment and retaliation (*Id.* at ¶¶ 171, 174-175, 193, 210);

18. First Amendment retaliation claim against Defendant Dickey (*Id.* at ¶¶ 164-167, 176, 179, 211);

19. An Eighth Amendment deliberate indifference claim against Defendants Davis and Ireland (*Id.* at ¶¶); and,

20. An Eighth Amendment failure to protect claim against Defendants Carter, Ennis, Davis, Ireland, and Oberlander arising from their failure to prevent continual harassment and retaliation by their subordinates (*Id.* at ¶¶ 160, 167, 173, 212, 167, 213, 177, 188, 191, 204, 214).

On January 8, 2018, the Court denied Defendants' motion to dismiss, which requested that the claims of the Amended Complaint be severed into multiple lawsuits or, alternatively, that Preacner be ordered to file a more definite statement of his claims. After discovery, the Defendants moved for summary judgment arguing alternatively that (1) Preacher failed to exhaust his administrative remedies regarding many of his claims; (2) many of the claims of Preacher's Amended Complaint are legally deficient on their face; and (3) the record is

insufficient to support any remaining claims. The matter has been fully briefed and is ripe for disposition.

III.     Factual Background

Because the Amended Complaint is not organized into counts and covers many ostensibly unrelated events, the Court will not attempt to provide a chronological statement of the material facts. Instead, the Court will discuss the record evidence as relevant to the analysis of each of Preacher's claims.

IV.     Standard of Review

Federal Rule of Civil Procedure 56(a) requires the court to enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under this standard "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Anderson*, 477 U.S. at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether a genuine issue of material fact remains for trial, the court must view the record and all reasonable inferences to be drawn therefrom in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*,

963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. Instead, once the movant satisfies its burden of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party must to go beyond his pleadings with affidavits, depositions, answers to interrogatories or other record evidence to demonstrate specific material facts that give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Further, under Rule 56, a defendant may seek summary judgment by pointing to the absence of a genuine fact issue on one or more essential claim elements. The Rule mandates summary judgment if the plaintiff then fails to make a sufficient showing on each of those elements. When Rule 56 shifts the burden of production to the nonmoving party, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. *See Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

V.    Discussion

    A. Claims Against Whisner, Holloway and Dittman Arising Out of the Allegedly False Misconduct Report and the Loss of Preacher's Employment in the Dietary Department

        i.     The Record Does Not Support Any Claim Against Whisner.

Whisner is a DOC employee who also worked in the Dietary Department. Against her Preacher asserts a Fourteenth Amendment discrimination claim, a First Amendment claim for both retaliation and access to courts, and an Eighth Amendment conditions of confinement claim. All these claims relate to an allegedly false misconduct charge he asserts Whisner submitted against him that resulted in the loss of his employment in the Dietary Department. The record does not support any of these claims.

Preacher asserts that Whisner submitted a false misconduct charge alleging sexual harassment against him on May 29, 2016. He further asserts that this misconduct charge caused him to lose his job and to be placed in the Restrictive Housing Unit or "RHU." ECF No. 23, ¶ 32. Finally, he alleges that Whisner made the allegedly false misconduct charge based upon his Islamic faith and his race. Preacher has not proffered any evidence, however, that Whisner acted based upon any religious or racial animus towards Preacher. Instead, he relies upon his affidavits and deposition testimony denying that he sexually harassed Whisner and attesting that Dittman and Holloway directed religious and racial taunts against him. *Id.* at ¶ 25, 26.

Preacher acknowledges that he had been the subject of allegations of sexual harassment prior to any asserted discriminatory statement or actions by Holloway and Dittman. (ECF No. 92-1, pp. 76-78). The Defendants have submitted evidence that Preacher made sexually harassing comments to the female employees who were working in the Dietary Department. (Def's Ex. 7, p. 4; Ex. 8, p. 4, Ex. 9). Preacher denies that he did so. (ECF Nos. 103-1; 107, ¶¶2-3). The veracity of Whisner's sexual harassment misconduct charge against Preacher, however, is immaterial because Preacher has not proffered evidence that Whisner's or any other person's charge was motivated by any racial or religious animus. In fact, he acknowledges that he never had any problem or issues with Whisner prior to the filing of her misconduct charge. (*Id.* at p. 73).

Although Preacher speculates that Whisner was somehow in cahoots with Holloway and Dittman, he acknowledges that he is not aware of any facts to support such a finding. (*Id.* at pp. 75-76). While certain of Holloway and Dittman's statements and actions relative to Preacher can reasonably be interpreted as racially or religiously motivated, the record is inadequate to support a finding that Whisner's filing of her misconduct charge was so motivated or that she filed the

charge at the urging of Holloway or Dittman. Preacher has also failed to produce any evidence that Whisner treated him differently from any non-black or non-Muslim inmate to support his Fourteenth Amendment disparate treatment claim. This is fatal to that claim because a plaintiff must identify a similarly situated individual who was treated differently in order to establish an equal protection claim. *See, e.g., Karns v. Shanahan*, 879 F.3d 504, 521 (3d Cir. 2018) (holding equal protection claim lacked merit, in part, because plaintiffs "point[ed] to no evidence that [the officers] treated similarly situated individuals differently. They d[id] not even identify other individuals who might be similarly situated"); *see also Perano v. Twp. Of Tilden*, 423 Fed. App. 234, 238-39 (3d Cir. 2011) ("Without more specific factual allegations as to the allegedly similarly situated parties, he has not made plausible the conclusion that those parties exist and that they are like him in all relevant aspects."); *Carson v. Mulvihill*, 488 Fed. App. 554, 563 (3d Cir. 2012) (upholding dismissal of equal protection claim where plaintiff failed to "allege facts showing that he was similarly situated to the inmates who received wheelchair footrests, crutches and canes, or that there was no rational basis for his different treatment").

Nor does the record include any evidence that Whisner asserted a false misconduct charge or falsified evidence in retaliation for any constitutionally protected conduct on the part of Preacher. See *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) ("To state a claim for retaliation, a prisoner must allege that: (1) he was engaged in constitutionally protected conduct, (2) 'he suffered some adverse action at the hands of prison officials,' and (3) 'his constitutionally protected conduct was a substantial or motivating factor in the decision' to take that action."). There is no evidence, direct or circumstantial, that Whisner had any retaliatory motive for submitting her misconduct charge. She had exhibited no hostility towards Preacher based upon his race or religion, and he had not asserted any grievance or lawsuit against her in response to

which she allegedly retaliated. Absent such evidence, Preacher's First Amendment retaliation claim against Whisner also fails.

Similarly, to the extent Preacher may be attempting to assert that Whisner conspired with Holloway and Dittman to violate his constitutional rights, this claim also fails based upon lack of evidence. In order to demonstrate a conspiracy, "a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of law.'" *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 700 (3d Cir. 1993) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)), abrogated on other grounds by *United Artists Theatre Circuit, Inc. v. Twp. of Warrington, Pa.*, 316 F.3d 392, 400 (3d Cir. 2003). "Bare conclusory allegations of 'conspiracy' or 'concerted action' will not suffice to allege a conspiracy. The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred." *Flanagan v. Shively*, 783 F.Supp. 922, 928 (M.D. Pa. 1992). The plaintiff's allegations of a conspiracy "must be supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each Defendant allegedly played in carrying out those objectives." *Id.* A plaintiff cannot rely on subjective suspicions and unsupported speculation. *Young v. Kann*, 926 F.2d 1396, 1405 n. 16 (3d Cir. 1991). Here, Preacher's assertion that Whisner was somehow in cahoots with Holloway and Dittman is based upon nothing more than suspicions and unsupported speculation.[2]

---

[2] Preacher's Amended Complaint generally alleged that Whisner's false misconduct and the resulting loss of his position in the Dietary Department constituted a violation of his right to access the courts. However, he failed to allege that he lost a non-frivolous legal claim as a result of the incident. In fact, the Amended Complaint's discussion of this incident does not reference any other judicial or other proceeding. Accordingly, the Amended Complaint fails to state an access to courts claim against Whisner, Holloway or Dittman. Further, Preacher's brief does not argue or discuss such a claim against these Defendants. Therefore, to the extent Preacher may have previously asserted such a claim, he apparently abandoned it on summary judgment.

ii.     The Record Does Not Support an Eighth Amendment Claim Against Whisner, Holloway or Dittman.

Preacher asserts that Whisner's allegedly false misconduct charge gave rise to conditions of confinement that violated the Eighth Amendment.  To succeed on an Eighth Amendment claim based on prison conditions, a plaintiff must show "he has suffered an objectively, sufficiently serious injury, and that prison officials inflicted the injury with deliberate indifference." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). An objectively, sufficiently serious injury is one that denies the inmate "the minimal civilized measure of life's necessities," such as food, water, shelter.  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Young v. Quinlan*, 960 F.2d 351, 364 (3d Cir.1992) (holding that, at a minimum, correctional institutions must provide inmates with "adequate food, clothing, shelter, sanitation, medical care, and personal safety"). Furthermore, to establish deliberate indifference: 1) a prison official must know of and disregard an excessive risk to inmate health or safety; 2) the official must be aware of facts from which an inference could be drawn that a substantial risk of serious harm exists, and 3) the official must also draw the inference.  *Farmer*, 511 U.S. at 837.

Courts have routinely held that the issuance of false misconducts is not a sufficiently serious deprivation to support a claim of cruel and unusual punishment.  *See, e.g., Booth v. Pence*, 141 Fed. App. 66, 68 (3d Cir. 2005) (citing *Farmer*, 511 U.S. at 834 (1994)); *see also Swinson v. Dep't of Corr.*, 2009 WL 33330, at *10 (W.D. Pa. Jan. 5, 2009) ("Plaintiff's allegations of false misconduct charges fail to state an Eighth Amendment violation."). Likewise, Preacher has failed to produce evidence to support the existence of any condition that presented an excessive risk to his health or safety or to attribute the creation or knowledge of such a risk to any Defendant.

Preacher repeatedly and vaguely claims that he has been the object of repeated sexual and other forms of harassment but when given the opportunity to identify specific conduct or other facts upon which he based his conclusory allegations, he declined to do so. *See* ECF No. 92-1, pp. 103-106 (in which Preacher declines to divulge what specific sexual harassment he endured). The closest Preacher came to identifying evidence to support an Eighth Amendment claim was his assertion that a foreign object was placed in his food on his meal tray. However, Preacher has produced no evidence that any Defendant was responsible for or had knowledge of this conduct. While accepting Preacher's factual claim that a foreign object was present in his food and resulted in a dental injury, an Eighth Amendment claim based upon this assertion cannot proceed unless the record includes evidence to support an inference that one or more of the Defendants were responsible for creating the risk to Preacher's health or had knowledge of and acted with deliberate indifference to the risk. No such evidence appears in the record.

Finally, to the extent that Preacher asserts that Holloway and Dittman's allegedly racist taunts and conduct constituted cruel and unusual punishment, this claim also fails because verbal harassment, by itself, does not give rise to a constitutional violation, even if that harassment includes racist taunts. *See Vega v. Philadelphia Sheriff's Dep't*, 1986 WL 13479 *1 (E.D.Pa. Nov. 26, 1986) (threatening detainee with gestures or words does not create constitutional violations); *Williams v. Pecchio*, 543 F.Supp. 878 (W.D.N.Y.1982) (taunting prisoner with racist epithets did not create Eighth Amendment violation). Accordingly, Whisner, Holloway and Dittman are entitled to summary judgment on Preacher's Eighth Amendment conditions of confinement claim.

iii.    The Record Does Not Support Preacher's Supervisory Liability Claims Against Oberlander, Ennis, and Overmeyer.

Preacher's remaining allegations regarding the loss of his job in the Dietary Department concern supervisory officials—Oberlander, Ennis, and Overmeyer—whose sole involvement was reviewing and responding to Preacher's grievances.  In order to prevail on a claim pursuant to 42 U.S.C. § 1983, a plaintiff must prove that a defendant, acting under color of state law, deprived the plaintiff of a right secured by the Constitution or laws of the United States.  *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995); *Estate of Smith v. Marasco*, 430 F.3d 140, 151 (3d Cir. 2005); 42 U.S.C. § 1983.  It is axiomatic that liability under § 1983 requires a defendant's "personal involvement" in the deprivation of a constitutional right.  *See Gould v. Wetzel*, 2013 WL 5697866, at *2 (3d Cir. Oct. 21, 2013).  This means that each defendant must have played an "affirmative part" in the complained-of misconduct.  *Iqbal*, 556 U.S. at 677 ("In a § 1983 suit ... [a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); *Oliver v. Beard*, 358 F. App'x 297, 300 (3d Cir. 2009).  In the absence of specific allegations that a defendant played a role in depriving the plaintiff of a constitutional right, dismissal is appropriate.  *See, e.g., Mearin v. Swartz*, 951 F.Supp.2d 776, 781-82 (W.D. Pa. 2013) (dismissing claims pursuant to Rule 12(b)(6) because the plaintiffs had failed to set forth sufficient facts to establish that certain defendants had played an affirmative part in the alleged Eighth Amendment violation).

The record shows that these Defendants' sole relation to this claim stems from their participation in the grievance review process; as such, Preacher has failed to demonstrate their personal involvement.  *See Mincy*, 508 Fed. Appx. at 104 (3d Cir. 2013) ("[A]n officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement."); *see also Rogers v. United States*, 696 F.Supp.2d 472, 488 (W.D. Pa.

2010) ("If a grievance official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official."). Accordingly, summary judgment must be granted in favor of Defendants Oberlander, Ennis, and Overmeyer on this claim.

B. Claims Relating to Preacher's Disciplinary Custody Between June and July, 2015

    i. The Record Does Not Support Preacher's Excessive Force, Sexual Harassment and Retaliation Claims Against Frederick, Long, Smalls, Farcus, Termine and Heffernan.

Preacher asserts numerous claims related to his time in disciplinary custody beginning in June and continuing until July 25, 2015. Specifically, the Court can discern: an excessive force claim against Frederick and Long stemming from incidents on June 19 and June 25 (*see* ECF No. 23, ¶ 45); a sexual harassment claim against Smalls and Farcus (*Id.* at ¶ 42); and a retaliation claim against Farcus, Smalls, Long, Termine, and Heffernan. (*Id.* at ¶ 49)

    a. Excessive Force

Preacher's excessive force claim against Long and Frederickson stems from incidents on June 19 and 25, 2015. Preacher lodged multiple assault allegations against Long and Frederick: first, an incident in which Frederickson gripped his arm (*see* ECF No. 23, ¶ 45), and slammed his head and shoulder into the cell door; and second, an incident in which Long pinched and "gripped [his] arm tightly" on June 25, 2015 (*see* ECF No. 25, ¶53-54). Frederick and Long argue that they are entitled to summary judgment on these claims because Preacher failed to fully exhaust his administrative remedies. The Court agrees.

It is well-established that the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e(a) (the "PLRA"), requires a prisoner to exhaust any available administrative remedies before he may bring an action pursuant to 42 U.S.C. § 1983 challenging the conditions of his confinement.

42 U.S.C. § 1997e(a). This exhaustion requirement applies to all claims relating to prison life which do not implicate the duration of the prisoner's sentence. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Further, the statute requires "proper exhaustion," meaning that a prisoner's completion of the administrative review process must also satisfy the applicable procedural rules of the prison's grievance system. *Fennell v. Cambria County Prison*, 607 Fed. Appx. 145, 149 (3d Cir. 2015). A procedurally defective administrative grievance, even if pursued to final review, precludes action in federal court. *Id.* Failure to exhaust administrative remedies under the PLRA is an affirmative defense that must be pleaded and proven by defendants. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

The grievance system utilized in Pennsylvania's prison system requires inmates to satisfy a three-step grievance and appeals process. *See* Grievance System Policy DC ADM-804; *Smith v. Sec. of Pa. Dept. of Corrections*, 2018 WL 279363, at *2 (W.D. Pa. Jan. 3, 2018). First, the inmate must "legibly set forth all facts and identify all persons relevant to his claim in a grievance which will then be subject to 'initial review.'" *Smith*, 2018 WL 279363, at *2 (citing *Spruill v. Gillis*, 372 F.3d 218, 233 (3d Cir. 2004)). Second, the initial review must be appealed to the Facility Administrator for a second level of review. *Id.* Finally, "the inmate is required to file an appeal to the Secretary's Office of Inmate Grievances and Appeals ("the Secretary's Office")." *Id.* All three stages of review must be completed before a grievance is deemed administratively exhausted for purposes of the PLRA.

Apropos to the instant case, however, DC-ADM 804 contains an additional requirement: that an inmate who "desires compensation or other legal relief normally available from a court" must "request the relief with specificity in his/her initial grievance." *See Wright v. Sauers*, 2017 WL 3731957 (W.D. Pa. Aug. 30, 2017); *Spruill*, 372 F.3d 218. Courts characterize the

satisfaction of this requirement as "proper exhaustion." *Smith*, 2018 WL 279363, at *3 (noting

that a grievance must be fully exhausted to final review *and* "properly exhausted" with respect to

remedy).[3] Pursuant to this requirement, an inmate is precluded from seeking legal relief in a

lawsuit, including monetary damages, if the inmate did not request that same relief in his

grievances (even if he appealed those grievances to the Secretary's Office for final review). *See,*

*e.g., Wright*, 2017 WL 3731957, at *7 (finding lack of proper exhaustion where plaintiff failed to

set forth desired monetary relief on his initial grievance form as required by DC-ADM 804);

*Camacho v. Beers*, 2018 WL 6618410, at *3 (W.D. Pa. Dec. 18, 2018) (holding that, because

"Plaintiff failed to request the specific relief of monetary compensation in the grievances he filed

as to the subjects of this lawsuit . . . he did not exhaust all administrative remedies with regard to

such claims . . . [and] may not pursue an action in federal court based on the claims raised in his

procedurally defective grievances."); *Sanders v. Beard*, 2013 WL 1703582, at *6-7 (M.D. Pa.

Apr 19, 2013) (dismissing claims for monetary damages brought by plaintiffs who did not

request monetary damages in their initial grievances as required by DC-ADM 804).

In the present case, Preacher filed Grievance 572347 following the first incident, but

failed to appeal its denial. Def. Ex. 12; 78. Moreover, he failed to include a request for relief in

his grievance. *Id.* Regarding the second incident, the record reflects that Preacher failed to

appeal from the denial of the three initial grievances he filed. (Def. Ex. 15, 16, 17, 78). Further,

the record also indicates that Preacher failed to include a request for relief. *Id.* Thus, he failed

to fully and properly exhaust his administrative remedies. This is fatal to his claim of excessive

force against Frederick and Long.

---

[3] Conversely, courts in this district have occasionally characterized an inmate's failure to properly exhaust as a form
of procedural default. *See, e.g., Wright*, 3731957, at *6 (characterizing a failure to specifically request monetary
damages in an otherwise fully-exhausted grievance as "giv[ing] rise to procedural default").

b. Sexual Harassment

Farcus and Small argue that both Preacher's allegations and the record evidence do not support his Eighth Amendment claim based upon their alleged acts of sexual harassment. The allegations supporting this claim are as follows. On June 19, 2015, Smalls and Farcus told Preacher to "lift that big black cock and squeeze your sack for me." ECF No. 23, ¶ 42. Although offensive, these facts are inadequate to support an Eighth Amendment claim.

The Third Circuit's framework for determining whether sexual harassment violates the Constitution requires a plaintiff to satisfy both a subjective and an objective element. *Ricks v. Shover*, 891 F.3d 468, 473 (3d Cir. 2018). Specifically, "the incident must be objectively, sufficiently intolerable and cruel, capable of causing harm, and the official must have a culpable state of mind." *Id.* at 475.

1. Subjective Element

To evaluate the subjective prong, a reviewing court must consider "whether the official had a legitimate penological purpose or if he acted 'maliciously and sadistically for the very purpose of causing harm.'" *Id.* at 475 (quoting *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986)). In the sexual abuse context, "[t]he nature of the violative conduct itself will often be enough to demonstrate the prison official's culpable state of mind." *Id.* For example, "if ... the officer intentionally brings his or her genitalia into contact with the inmate in order to arouse or gratify the officer's sexual desire or humiliate the inmate, a violation is self-evident because there can be no penological justification for such contact." *Crawford*, 796 F.3d at 252. On the other hand, where the contact is "incidental to legitimate official duties, such as a justifiable pat frisk or strip search," then it is less likely that the search was undertaken "to arouse or gratify the officer or humiliate the inmate." *Ricks*, 891 F.3d at 476 (quoting *Crawford*, 796 F.3d at 257-58). That

said, "even if contact between an officer and inmate's genitalia was initially justified, if the officer finds no contraband, continued sexual contact may be actionable." *Crawford*, 796 F.3d at 257.

### 2. Objective Element

In addition to satisfying the subjective element, an inmate must demonstrate that the incident was so objectively "intolerable and cruel" or "capable of causing harm" as to violate the Eighth Amendment. *Rick*, 891 F.3d at 475. As courts have frequently observed, "not ... every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* (quoting *Hudson*, 503 U.S. at 9). Rather, "the Eighth Amendment shields inmates from only those actions 'repugnant to the conscience of mankind.'" *Id.* (quoting *Hudson*, 503 U.S. at 10). Thus, "even if sexualized touching lacks a penological purpose, it may still fall below the threshold of constitutional cognizability based on a lack of objective seriousness." *Ricks*, 891 F.3d at 476, 477-78 (declining to impose a "zero tolerance" standard for "all minor sexualized touching in prison," such that all such "inappropriate touching is per se unconstitutional.").

Turning to the allegation in this case, the Court finds Preacher's claim fails as a matter of law because Preacher has not alleged a single instance of inappropriate sexual touching. "[S]exual harassment in the absence of contact or touching does not establish an Eighth Amendment violation." *McCain v. Wetzel*, 2018 WL 1211507, at *3 (W.D. Pa. Mar. 8, 2018) (citing *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000)). "Verbal harassment, including lewd comments, sexual propositioning, and the like, is not sufficient to satisfy the objective element of an Eighth Amendment sexual harassment claim." *Id.* (citing Manon v. *Garrison*, 2012 WL 3542328 (M.D. Pa. Aug. 15, 2012)). Rather, "physical sexual assault or

threats of physical assault is required for the objective element to be met." *Id.* Accordingly, summary judgment must be granted in Farcus and Smalls' favor.

      c. Retaliation

Preacher asserts a retaliation claim against Farcus, Smalls, Long, Termine, and Heffernan. As noted *supra*, in order to establish illegal retaliation for engaging in protected conduct, a plaintiff must allege that: (1) his conduct was constitutionally protected; (2) he suffered an adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to take the adverse action. *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016).

Here, Preacher's allegations of retaliation against these Defendants consists of one lone conclusion that is unsubstantiated by any evidence in the record. Preacher's conclusion lacks factual allegations identifying the protected conduct upon which he bases the claim, the retaliatory action taken by Farcus, Smalls, Long, Termine, and Heffernan, and facts supporting an inference that the retaliatory action was motivated by the protected conduct. Accordingly, Farcus, Smalls, Long, Termine are entitled to summary judgment on this claim.

Ennis, Carter, Mongelluzo, Overmeyer, Culver, and Termine are mentioned in passing during Preacher's discussion of the events from June to July 25, 2015. To the extent that claims have been asserted against them, these Defendants all argue that Preacher has failed adequately to allege their personal involvement in any retaliatory conduct because their only involvement in the incident was their alleged receipt of grievances and request slips. The Court agrees.

It is "well established that the filing of a grievance is not sufficient to show the actual knowledge necessary for a defendant to be found personally involved in the alleged unlawful conduct." *Mearin v. Swartz*, 951 F.Supp.2d 776, 782 (W.D. Pa. 2013). *See also Mincy v.*

*Chmielsewski*, 508 Fed. Appx. 99, 104 (3d Cir. 2013) ("[A]n officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement."); *Rogers v. United States*, 696 F.Supp.2d 472, 488 (W.D. Pa. 2010); see also *Iqbal*, 556 U.S. at 677 (each defendant must have played an "affirmative part" in the complained-of misconduct). Because Preacher has not alleged or produced evidence of Ennis, Carter, Mongelluzo, Overmeyer, Culver, or Termine's personal involvement in any retaliatory or other actionable conduct, these Defendants are entitled to summary judgment on Preacher's claims.

C. Preacher's Claims from January to March 2016

Construing Preacher's Amended Complaint liberally, paragraphs 64-91 appear to state the following claims arising from the events between January and March, 2016: two false misconducts written by Long on January 23, 2016 and an unspecified date in February (ECF No. 23, ¶ 66, 75); sexual harassment by Long on February 9, 2016 and an additional unspecified date in February (*Id.* at ¶ 70-71, 75); the destruction of legal papers by Long on February 16, 2016 (*Id.* at ¶ 73); Long spitting in Preacher's meal tray on March 2, 2016 (*Id* at ¶ 85-87); Cowan failing to provide adequate psychological aid on an unspecified date (*Id.* at ¶ 89); and sexual harassment by Culver on March 25, 2016 (*Id.* at ¶ 90-91). Boddorf, Termine, Barnes, Smalls, Culver, Heffernan, and Mongelluzo are mentioned in these paragraphs, but the Court can discern no claims or allegations that any of them were personally involved in the alleged wrongs during this timeframe.

The relevant Defendants have moved for summary judgment on all claims, arguing that Preacher failed to fully and properly exhaust his administrative remedies, and, alternatively that Preacher has failed to state a claim as a matter of law. The Court agrees

i.  Long's Allegedly False Misconduct and Sexual Harassment

Regarding Long's allegedly false misconduct against Preacher, the Court has already held that a false misconduct is insufficient as a matter of law to support a conditions of confinement claim. *See Swinson v. Dep't of Corr.*, 2009 WL 33330, at *10 ("Plaintiff's allegations of false misconduct charges fail to state an Eighth Amendment violation."). Moreover, specifically regarding the January 23 misconduct, Preacher did not appeal its denial to final review. (Def. Ex. 22, Ex. 79). Long is therefore entitled to summary judgment on this claim. Regarding Long's alleged sexual harassment, the Court has likewise already held that mere verbal threats and harassment, without an allegation of improper sexual touching, is insufficient as a matter of law to support a claim. *Ricks v. Shover*, 891 F.3d 468, 473 (3d Cir. 2018). Moreover, Preacher failed to request relief in his grievance; thus, he failed to properly exhaust his administrative remedies. (Def. Ex. 28). Regarding Preacher's allegation that Long spit in his food, Preacher failed to request relief in his grievance. (Def. Ex. 32, 82). Thus, he failed to properly exhaust his administrative remedies on this claim. Regarding the Cowan's allegedly deficient mental health treatment, Preacher did not file a grievance. (Def. Ex. 80). Thus, he failed to attempt to exhaust this claim.

Regarding the destruction of his legal papers, Preacher has failed to state a claim as a matter of law. It is well-established that prisoners have a fundamental right to access the courts. *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (citing *Lewis v. Casey*, 518 U.S. 343, 346 (1996)). To prevail on an access to courts claim, a plaintiff must show: (1) "that they suffered an 'actual injury' in that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim"; and (2) that they have "no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." *Id.* at 205-06 (quoting *Christopher v.*

*Harbury*, 536 U.S. 403, 415 (2002)).  The complaint must "describe the underling arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" *Id.* (quoting *Christopher*, 536 U.S. at 416-17).  The plaintiff must also demonstrate that the denial of access actually caused the alleged injury to occur.  *Tinsley v. Gloria*, 369 Fed. Appx. 378, 381 (3d Cir. 2010) (citing *Lewis*, 518 U.S. at 352-54).

In this case, Preacher has failed to allege any actual injury, as he has not alleged any facts to support that he had a nonfrivolous or arguable underlying claim.  Even assuming the existence of an injury, Preacher likewise has failed to demonstrate that the denial or loss of his unspecified legal papers actually caused that injury.  Accordingly, Long is entitled to summary judgment on Preacher's access to courts claim.

ii.     March 28 Food Incident

This incident primarily concerns a small piece of metal that was found in Preacher's food tray.  Preacher asserts several conclusory claims stemming from this incident, including a conditions of confinement claim, a retaliation claim, an equal protection claim, and a deliberate indifference to serious medical needs claim.  The Defendants argue that they are entitled to summary judgment due to Preacher's failure to exhaust his administrative remedies as well as on the merits.  The Court agrees.

The relevant factual background for this claim is as follows.  Preacher claims that on March 28, 2016, he was handed a food tray by Long.  ECF No. 23, ¶ 98-103.  Preacher allegedly bit down on a piece of food containing a small piece of rusted metal.  ECF No. 23, ¶ 98-105. The metal allegedly caused an injury to his tongue, lip, gums, and teeth.  *Id.*  The foreign objective was later determined to be a small piece of a Bic lighter.  Def. Ex. 45, p. 3-5. However, the record does not shed light on how the object came to be present in Preacher's food.

While Long delivered the tray to Preacher, food trays are prepared by other inmates, and there is no evidence that Long placed the piece of metal in Preacher's food after the tray was prepared. *Id.* In addition, the record reflects that no prison staff member chooses which tray goes to a specific inmate. Def. Ex. 45, p. 2; Ex. 46, p. 8. Long arguably would have had the opportunity to place the object in Preacher's food as he delivered his tray; however, any inference that he did so would be pure speculation. No eyewitness or surveillance evidence has been identified to support such an inference, and the prison's investigation of the matter disclosed no evidence to support such an inference. While it is concerning that any foreign object could end up in an inmate's food, this record does not support a triable issue that the object in Preacher's food was intentionally placed there by Long or any other person. Finally, the Court notes that, photographs taken of Preacher's teeth, gums, lips, and tongue after the incident belie the extent of the injury he alleged in his Amended Complaint. Indeed, the photographic evidence shows no noticeable injury. *Id.* at p. 16. Further, an investigation revealed that the damage to Preacher's teeth or gums was attributable to "chronic dental decay." Def. Ex. 45, p. 3-5.

Because the record is insufficient to support a finding that Long placed a foreign object in Preacher's food, his retaliation claim based upon that alleged act fails as a matter of law. Accordingly, summary judgment must be granted in Long's favor on this claim.

Preacher states that Heffernan threatened to use OC spray on him if he did not return his meal tray. Heffernan moves for summary judgment on the grounds that, even assuming that this allegation presents a potentially actionable claim, Preacher failed to exhaust the claim. The Court agrees. Review of the record reflects that Preacher failed to timely exhaust Grievance 424090 to final appeal. Def. Ex. 46. Thus, Preacher failed to exhaust his administrative remedies, and Heffernan is entitled to summary judgment in his favor on this claim.

To the extent Preacher has asserted an equal protection claim stemming from this incident, this Court has already held that failure to provide evidence that a non-class member received different treatment than the plaintiff is fatal to the claim. *See Perano*, 423 Fed. App. at 238-39 ("Without more specific factual allegations as to the allegedly similarly situated parties, he has not made plausible the conclusion that those parties exist and that they are like him in all relevant aspects."). In this case, Preacher has failed to produce evidence that a non-class member received different treatment. Accordingly, to the extent Preacher may have intended to assert an equal protection claim based upon this incident, it fails.

Finally, Preacher states that "as a result of the facts described in paragraphs 64-106, [he suffered a violation of] my first amendment rights not to be subjected to unlawful retaliation by Defendants Long, Boddorf, Termine, Barnes, Smalls, Culver, Heffernan, and Mongelluzo who by their actions formed a coalition to harass and retaliate against me [.]" ECF No. 23, ¶ 106. The Amended Complaint and the summary judgment record do not disclose any personal involvement on the part of Boddorf, Termine, Barnes, Smalls, Culver or Mongelluzo in any of the conduct at issue. Construing Preacher's allegations liberally, the Court interprets his claim against these Defendants to be based upon an alleged failure to protect him from or intervene in the alleged misconduct of Long and Heffernan. As discussed above, however, the record does not support any constitutional claim against Long and Heffernan. For this reason, no claim can lie against the remaining Defendants for their failure to protect Williams from their alleged misconduct. Courts in this Circuit have consistently held that a failure to protect claim under the Eighth Amendment requires an underlying constitutional violation. *See, e.g., Nico Elec. Contractor, Inc. v. City of Camden*, 709 Fed. App. 148, 151 n. 8 (3d Cir. 2017) (upholding the district court's dismissal of all claims against supervisory officials because there was no

underlying violation committed by prison guards); *Wilcox v. Martinez*, 2019 WL 851373, at *5 (D.N.J. Feb. 20, 2019) (dismissing claims against prison officials because the plaintiff failed to adequately plead any underlying violation of his constitutional rights by the prison guard); *Buoniconti v. City of Philadelphia*, 148 F. Supp. 3d 425, 441 (E.D. Pa. 2015) (dismissing claim that defendant prison officials failed to properly investigate an assault against the plaintiff because there was no underlying violation surrounding assault). *See also Mulholland v. Gov't Cty. of Berks, Pa.*, 706 F.3d 227, 238 n. 15 (3d Cir. 2013) (quoting *Estate of Smith v. Marasco*, 318 F.3d 497, 505 (3d Cir. 2003)) ("The initial question in a section 1983 action is whether the plaintiff has alleged a deprivation of a constitutional right at all."). Because the record does not support an underlying constitutional violation, Preacher cannot maintain a claim against the foregoing supervisory and/or grievance officials. Accordingly, summary judgment must be entered in favor of the remaining Defendants.

Plaintiff alleges that Nurse Hill "exercised deliberate indifference […] by intentionally clean[ing] the Plaintiff (sic) injuries before taking pictures to aid Defendants (sic) Long in eluding liability, attempt to cover up the assault." ECF No. 23, ¶ 116. He also complains that she failed to prescribe antibiotics or pain medications in deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97 (1976) (stating that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment") (internal quotation omitted). To establish a violation of his constitutional right to adequate medical care, a plaintiff is required to allege facts that demonstrate: (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Such indifference is manifested by an intentional refusal to provide care, delayed medical

treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury." *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990).

It is well-settled that "an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim." Tillery v. Noel, 2018 WL 3521212, at *5 (M.D. Pa. June 28, 2018) (collecting cases). Such complaints fail as constitutional claims because "the exercise by a doctor of his professional judgment is never deliberate indifference." *Gindraw v. Dendler*, 967 F. Supp. 833, 836 (E.D. Pa. 1997) (citing *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.")). "Therefore, where a dispute in essence entails nothing more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as a constitutional claim under § 1983." *Tillery*, 2018 WL 3521212, at *5 (citing *Gause v. Diguglielmo*, 339 Fed. Appx. 132 (3d Cir. 2009) (characterizing a dispute over pain medication as the type of "disagreement over the exact contours of [plaintiff's] medical treatment" that does not violate the constitution)).

By the same token, "the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice standing alone is not a constitutional violation." *Tillery*, 2018 WL 3521212, at *5 (quoting *Estelle*, 429 U.S. at 106). "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." *Durmer*, 991 F.2d at 67 (citations omitted). Thus, "courts have consistently rejected Eighth Amendment claims where an inmate has

received some level of medical care." *Hensley v. Collins*, 2018 WL 4233021, at *3 (W.D. Pa. Aug. 15, 2018) (quoting *Clark v. Doe*, 2000 WL 1522855, at *2 (E.D. Pa. Oct. 13, 2000)). *See also Wisniewski v. Frommer*, 751 Fed. Appx. 192, 195-96 (3d Cir. Oct. 3, 2018) (noting that "there is a critical distinction 'between cases where the complaint alleges a complete denial of medical care and those alleging inadequate medical treatment.'") (quoting *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017)).

Preacher's allegation that Nurse Hill cleaned his wound without first photographing the injury fails to state a claim for deliberate indifference to his serious medical needs. The Eighth Amendment prohibits deliberate indifference to a prisoner's serious medical needs. It does not require medical personnel to provide treatment in a manner that best serves the inmate's evidentiary or litigation needs.

Regarding his allegation that Nurse Hill failed to prescribe pain medications or antibiotics, the Court notes that Nurse Hill provided some level of care. Specifically, as Preacher asserts, she cleaned his wounds. The record does not support a finding that Preacher suffered from any infection or threat of infection that required administration of antibiotics or that he experienced severe pain that required medication. Preacher's claim against Nurse Hill must fail, because "courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care." *Hensley v. Collins*, 2018 WL 4233021, at *3 (W.D. Pa. Aug. 15, 2018). Accordingly, summary judgment is granted on Preacher's claim against Nurse Hill.

iii. Claims Based Upon Preacher's Confinement in a "Hard Cell" From April to May 2016

The Court discerns the following claims stemming from Preacher's confinement in a "hard cell." First, Preacher alleges that he received a false misconduct for refusing to return a "spork" from his dinner tray on April 6, 2016. ECF No. 23, ¶ 129. Second, Preacher alleges that Long snuck into his cell and destroyed his personal property on April 6, 2016. *Id.* at ¶ 131. Third, Preacher alleges that Culver came to his cell and listened to Preacher's complaint about the destroyed property but did nothing. *Id.* at ¶ 133. Fourth, Preacher alleges that Smith destroyed his legal mail. *Id.* at ¶ 144-145. Fifth, Preacher alleges that Booher moved his cell based on retaliatory motives. *Id.* at ¶ 142-143. Sixth, Preacher asserts a claim against Reddick for his alleged confiscation and copying of his legal mail on May 19, 2016. *Id.* at ¶ 151. Seventh, Preacher asserts a failure to protect claim against Overmeyer for all of the aforementioned conduct. *Id.* at ¶ 155-156.

Regarding Preacher's first claim, Preacher alleges that he received a false misconduct for refusing to return a "spork." Preacher does not specify who issued the misconduct, nor does he specify what about it was false. Instead, Preacher merely alleges that he told Smalls "I never got a fuckin spork." *Id.* at ¶ 129. Even if Preacher had identified the source of the misconduct report and its falsity, as this Court has already held, the issuance of a false misconduct does not rise to the level of a constitutional violation. Accordingly, summary judgment is granted to Small on this claim.

Regarding Preacher's second claim, Long argues that Preacher failed to exhaust his administrative remedies against him regarding the alleged April 6 destruction of property incident. The Court agrees. Review of the record indicates that Plaintiff filed his appeal outside

27

of the requisite time limit. (Def. Ex. 50, p. 11). Accordingly, Preacher failed to properly exhaust his administrative remedies, and summary judgment in Defendant Long's favor is warranted.

Third, Preacher alleges that Culver came to his cell and heard Preacher's complaint about the destroyed property but did nothing. This allegation fails to state a claim against Culver. Although a supervisor cannot encourage constitutional violations, "a supervising public official has [no] affirmative constitutional duty to supervise and discipline so as to prevent violations of constitutional rights by his or her subordinates." *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986). Thus, summary judgment in Defendant Culver's favor is warranted on this claim.

Fourth, Preacher alleges that Smith destroyed his legal mail. As noted *supra*, to prevail on an access to courts claim, a plaintiff must show: (1) "that they suffered an 'actual injury' in that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim"; and (2) that they have "no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit" *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). Here, Preacher has not alleged or identified any record evidence to support facts demonstrating that he lost the change to pursue a nonfrivolous legal claim because of the alleged destruction of his legal papers. Accordingly, Smith is entitled to summary judgment on this claim.

Fifth, Preacher alleges that Booher moved his cell based on retaliatory motives and destroyed his legal mail. As noted *supra*, an "adverse action" is one that would "deter a person of ordinary firmness" from exercising his First Amendment rights. *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000) (quoting *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000)). Here, the Court finds that a cell move is not sufficiently adverse such that it would deter a person of ordinary firmness from exercising his First Amendment right. Further, it is well established that an inmate has no constitutional right to be housed in a particular cell. *Podhorn v. Grondolsky*,

350 Fed. App. 618, 620 (3d Cir. 2009). Accordingly, summary judgment is granted to Booher on this claim.

Sixth, Preacher asserts a claim against Reddick for his alleged confiscation and copying of his legal mail on May 19, 2016. To prevail on an access to courts claim, a plaintiff must show: (1) "that they suffered an 'actual injury' in that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim"; and (2) that they have "no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." *Christopher*, 536 U.S. at 415. As with his other access to courts claims, Preacher misses the mark here by failing to make factual allegations or identify evidence supporting the essential elements of his claim. Accordingly, summary judgment granted in Reddick's favor on this claim.

Seventh, Preacher asserts a claim against Superintendent Overmeyer for failure to protect him from all above-mentioned conduct. However, as discussed above, Preacher has failed to make out a viable claim against any of the other named Defendant. For this reason, no claim can lie against the Defendant Overmeyer for his failure to protect Preacher from the alleged conduct. *See, e.g., Nico Elec. Contractor, Inc. v. City of Camden*, 709 Fed. App. 148, 151 n. 8 (3d Cir. 2017) (upholding the district court's dismissal of all claims against supervisory officials because there was no underlying violation committed by prison guards). Accordingly, summary judgment is entered in Defendant Overmeyer's favor.

iv.    The Shower incident

Preacher alleges that on June 6, 2016, he was stripped naked but not allowed to use a towel to cover himself for his shower. ECF No. 23, ¶ 161, 206. He asserts numerous claims against Booher, Hiler, and Gilara based upon this incident. These Defendants argue that Preacher failed to exhaust his claim. The Court agrees. Review of the record indicates that

Preacher did not file a grievance regarding this incident. (Def. Ex. 80, 84). Accordingly, he failed to exhaust his administrative remedies, and summary judgment is warranted on this claim.

     v.      The Visitation List issue

Preacher argues that Price removed his daughter and her mother from the visitation list on the basis of his Muslim religion. ECF No. 23, ¶ 189-196. Price argues that a non-discriminatory, non-religious reasons existed for his daughter's mother's exclusion from the list. Specifically, he states that she was on probation in Delaware County at the time, she was not actually the mother of Preacher's children, and Preacher provided a false address and false birthday for her. (Ex. 85, 86). The record includes no evidence that Price excluded the two individuals from the visitation list based upon Preacher's or any other person's religion. Further, the reasons for the exclusions articulated by Price are facially non-discriminatory, and Preacher has failed to produce evidence to support a finding that the stated reasons are pretextual. Accordingly, the Court holds that summary judgment is warranted on this claim.

     vi.      The September 26 False Misconduct.

Preacher alleged that Frey wrote a false misconduct against him on September 26, 2016. As the Court has explained above, a false misconduct does not rise to the level of a constitutional violation. Thus, summary judgment is entered in favor of Frey.

     vii.      July 6 and 9, 2016 Sexual Harassment

Preacher alleges that Coleman and Weiss twice sexually harassed him. He contends that the first instance occurred on July 6, during a strip search, when Weiss said, "lift your sock"[4] and "turn around and bend over and spread them cheeks." ECF No 23, ¶ 169. The second incident

---

[4] The Court is unaware whether this phrase includes a typo or has a particular meaning among inmates or prison personnel. For purposes of this discussion, the Court assumes it includes a reference to Preacher's genitalia.

occurred on July 9, 2016, when Coleman said "you look good with nothing on, let me see that sock again." *Id.* at ¶ 172.

As the Court has previously explained, verbally harassing comments alone are insufficient to state a claim under the Eighth Amendment. Accordingly, Coleman and Weiss are entitled to summary judgment on this claim.

### viii. Failure to Protect

Preacher states that he told Blicha of all the incidents and harassment and retaliatory acts during his rounds on July 7, 2016 but that Blicha failed to take any corrective action. As discussed above, however, a prison official such as Blicha cannot be liable for failing to protect Preacher from the conduct of other prison personnel that itself does not rise to the level of a constitutional violation. Accordingly, Blicha is entitled to summary judgment on this claim.

### ix. False Misconduct by Dickey

Preacher alleges that he was issued a false misconduct on July 14, 2016, in which Dickey claim Preacher lied during an interview about the piece of metal found in his food. Preacher alleges that this was in retaliation for him engaging in some unspecified protected conduct. Because Preacher has failed to allege what the protected conduct was, how it was related to the alleged retaliatory actions, and whether the punishment he received as a result of the allegedly false misconduct was so severe that it would deter a person of ordinary firmness from engaging in protected conduct, summary judgment entered in favor of Dickey on this claim.

### x. Failure to Intervene/Protect

Preacher asserts an Eighth Amendment failure to protect claim against Davis, Ireland, Carter, Ennis, and Oberlander for being present but failing to intervene in, or protect Preacher from, the allegedly unconstitutional conduct directed against him. As the Court has already

explained, no constitutional violations were committed against Preacher. Therefore, these Defendants cannot be held liable under a "failure to protect" theory of liability. Accordingly, summary judgment is entered in favor of these Defendants on this claim.

VI.     Conclusion

For the foregoing reasons, Defendants' motion for summary judgment (ECF No. 90) is GRANTED.


_____
RICHARD A. LANZILLO
United States Magistrate Judge

Dated: January 3, 2020